542-07/ROSS

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, New York 10005
(212) 425-1900

James L. Ross (JR6411)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
NAIAS MARINE S.A.,                              07 CV 10640 (PKL)

                        Plaintiff,

    - against -

TRANS PACIFIC CARRIERS CO. LTD.,

                        Defendant
-------------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT OF TRANS PACIFIC CARRIERS CO. LTD.'S MOTION TO VACATE THE RULE B ATTACHMENT OF THE PLAINTIFF AND DISMISS THE COMPLAINT

FREEHILL HOGAN & MAHAR,LLP
Attorneys for Defendant TRANS
PACIFIC CARRIERS CO. LTD.
80 Pine Street
New York, New York 10005
(212) 425-1900

James L. Ross
Manuel A. Molina
    Of Counsel

NYDOCS1/295302.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………..…………………………… ii

PRELIMINARY STATEMENT………………..…………………….... 1

FACTS………...…..………………………………………………..…… 1

 ARGUMENT

POINT I

      THE NAIAS RULE B ATTACHMENT  WAS BROUGHT TO
      HARASS DEFENDANT AND IS IN CONTRAVENTION OF
      ENGLISH ARBITRATION AND AMERICAN RULE B
      PROCEDURES………………………………............…........................ 2


POINT II

      PLAINTIFF HAS NOT MET ITS BURDEN TO SHOW WHY THE
      ATTACHMENT SHOULD BE MAINTAINED…………..…….………… 5


POINT III

      A CLAIM SOLELY FOR LEGAL FEES AND COSTS THAT MIGHT
       BE AWARDED IN LONDON ARBITRATION PROCEEDING
      IS NOT AN ADMIRALTY CLAIM WITHIN THE PURVIEW
      OF RULE B ……………………………………………………….…… 6

          A.    Under English law arbitration costs do not constitute
               an admiralty claim……………………………………………..6

          B.    Alternatively, under American law, a claim for legal
               fees and costs is not maritime……………………………….8

POINT IV

      THE COMPLAINT SHOULD BE DISMISSED AS THIS COURT LACKS
      SUBJECT MATTER JURISDICTION…………………………………..11


CONCLUSION …….……………………………..………………………… 12

## TABLE OF AUTHORITIES

*American Oil Trading, Inc. v. M/V SAVA,* 47 F. Supp. 2d 348 (E.D.N.Y. 1999) ........................10

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY,* 460 F.3d 434 (2d Cir. 2006) .............................6

*Bradford Marine, Inc v. M/V SEA FALCON,*
64 F.3d 585 (11th Cir. 1989) .................................................................................................10

*Chiquita Int'l Ltd. v. M/V BOSSE,*
No. 07-6786, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y.  Oct. 11, 2007)....................................2, 4

*Conley v. Gibson,* 355 U.S. 41 (1957) ................................................................................11

*Fednav, Ltd. v. Isoromar S.A.,* 925 F.2d 599 (2d Cir. 1991)...............................................8

*Gulf Marine and Industrial Supplies, Inc. v. M/V GOLDEN PRINCE,*
230 F.3d 178 (5th Cir. 2000) ................................................................................................. 10

*Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegación, C.A.,*
169 F. Supp. 2d 1341 (M.D.Fl. 2001) ......................................................................................5

*Makarova v. United States,* 201 F.3d 110 (2d Cir. 2001)...........................................................11

*Neitzke v. Williams,* 490 U.S. 329 (1989)................................................................................11

*Norfolk Southern Ry. Co. v. Kirby,* 543 U.S. 14 (2004) ...............................................................9

*Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*
151 F. 440 (7th Cir. 1907) .........................................................................................................9

*Papasan v. Allain,* 478 U.S. 265 (1986)........................................................................................11

*Patricia Hayes & Assocs. v. M/V BIG RED BOAT II*
No.00-6925, 2002 U.S. Dist. LEXIS 9867
(S.D.N.Y. May 31, 2002), *aff'd,* 339 F.3d. 76 (2d Cir. 2003)....................................................10

*Pires v. Heller,* No. 04-9069, 2004 U.S. Dist. LEXIS 23871
(S.D.N.Y. Nov. 24, 2004)............................................................................................................8, 9

*Salazar v. The Atlantic Sun,* 881 F.2d 73 (3d Cir. 1989)...............................................................5

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*
478 F. Supp. 2d 532 (S.D.N.Y. 2007) ......................................................................................3, 6

*T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.,*
  415 F. Supp. 2d 310 (S.D.N.Y. 2006) ........................................................................6

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,*
  No. 05-7955, 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. Oct. 23, 2006)........................................5

*Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263 (2d Cir. 2002) ...................................................6

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)……………………………………………………………........1,11

Fed. R. Civ. P. 12(b)(6)……………………………………………………………….....11

Fed. R. Civ. P.   9(h)……………………………………………………………...........12

28 U.S.C. § 1333……………………………………………………………..……………………12

Defendant, TRANS PACIFIC CARRIERS CO. LTD. ("TRANS PACIFIC"), through its attorneys, Freehill Hogan & Mahar, LLP, hereby submits this memorandum of law in support of its motion to vacate the Rule B attachment and dismiss the Complaint of Plaintiff NAIAS MARINE S.A. ("NAIAS"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule E(4)(f) of the Supplemental Admiralty Rules.

## PRELIMINARY STATEMENT

The dispositive issue for adjudication by this Court is whether the Plaintiff's claim for potential legal fees and costs that will be incurred in defending Defendant's claim in London arbitration  constitutes a valid *prima facie* admiralty claim within the purview of Rule B.  We submit that under English law (the law of the contract at issue) and United States law, a claim solely for defense legal fees and costs is not maritime and thus the Rule B maritime attachment obtained by the Plaintiff cannot be maintained.

## FACTS

The undisputed facts are simple and straightforward.  On October 25, 2007, TRANS PACIFIC filed a Rule B application seeking, *inter alia,* to obtain security for claims it had brought against NAIAS in London arbitration proceedings.  These claims were for a breach of a maritime charter party contract and included costs/legal fees.  (See NAIAS Verified Complaint, ¶¶16-17).  Judge Stanton granted the application and shortly thereafter TRANS PACIFIC successfully attached the sum of $978,238 in NAIAS' assets.  Although NAIAS promptly received Notice of Attachment, it never appeared or challenged the attachment. Instead, NAIAS posted substitute security in the form of a Letter of Guarantee from HSBC Bank (NAIAS Verified Complaint, ¶17).  Once NAIAS' furnished the bank guarantee, and given the fact that the merits of the claims were to be adjudicated by a London Arbitration Tribunal, TRANS PACIFIC filed a Notice of Voluntary Dismissal, which Judge Stanton

executed on November 14, 2007. Importantly, while the TRANS PACIFIC action remained open, NAIAS made no attempt whatsoever to seek counter-security for its potential defense costs and legal fees on the action before Judge Stanton.

On November 28, 2007, a mere two weeks after TRANS PACIFIC's action had been voluntarily dismissed, NAIAS instituted its own Rule B proceeding seeking security in the sum of $250,000. The sole basis for which NAIAS utilized the Rule B *ex parte* procedure was a claim for its estimated costs in defending TRANS PACIFIC's maritime claims in arbitration. It is undisputed that NAIAS has not asserted any independent claim for damages relating to a breach of the maritime charter party contract entered into by TRANS PACIFIC and NAIAS. (See NAIAS Verified Complaint and Declaration of Max Cross., ¶11).

## ARGUMENT

## POINT I

### THE NAIAS RULE B ATTACHMENT WAS BROUGHT TO HARASS DEFENDANT AND IS IN CONTRAVENTION OF ENGLISH ARBITRATION AND AMERICAN RULE B PROCEDURES

We submit that NAIAS has abused the Rule B *ex parte* process by seeking security for a claim that is not maritime and by not seeking counter-security before Judge Stanton when TRANS PACIFIC was in the District. Instead of allowing the validity of the NAIAS claim for counter-security to be resolved before Judge Stanton, NAIAS waited for the TRANS PACIFIC Rule B case to be dismissed and then commenced a new Rule B action for the purpose of interfering with the business activities of TRANS PACIFIC by intercepting wire transfers. Your Honor had previously adjudicated a factually similar situation and vacated an attachment. *Chiquita Int'l Ltd. v. M/V BOSSE*, No. 07-6786, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007).

As attested by Mr. Max Cross, the English solicitor handling the prosecution of TRANS PACIFIC's claims in arbitration, the charter party between Plaintiff and Defendant calls for London Arbitration with English law to apply. (Cross Decl. ¶ 7). The charter party also provides that arbitration should be conducted pursuant to the procedures of the London Maritime Arbitrator's Association ("LMAA"). (Cross Decl. ¶ 7). TRANS PACIFIC submitted its Claim Submissions on November 14, 2007 and under the LMAA rules, NAIAS is required to serve its Defense Submissions on or before December 12, 2007. (Cross Decl., ¶10).

While NAIAS may make an application for costs to the Arbitration Tribunal, it can do so *only after* it has served its Defense Submissions. (Cross Decl., ¶¶12-13). It is evident, therefore, that in utilizing the Rule B vehicle, NAIAS has not only made an application to this Court which is premature under the governing rules of the LMAA, but also, NAIAS has flaunted the very same rules by which it contractually agreed to be bound. If NAIAS cannot sustain its attachment, there is no hardship on NAIAS. It can seek security in the arbitration proceeding and NAIAS must be held to the contractual bargain it struck with TRANS PACIFIC in this regard. NAIAS deliberate evasion of LMMA rules should not be condoned by this Court. Accordingly, the attachment must be vacated for this ground alone. *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 543 (S.D.N.Y. 2007) (Judge Haight vacating attachment in violation of the stipulations contained in a charter party agreement because Rule B plaintiff must comply with the terms by which it agreed to be bound).

TRANS PACIFIC had commenced a Rule B action against NAIAS on October 25, 2007 (assigned to Judge Stanton) in which TRANS PACIFIC successfully obtained security for its maritime claims for breach of the charter party, as well as for its estimated costs of London

arbitration.[1]    NAIAS negotiated an agreement with TRANS PACIFIC whereby it posted substitute security to release of the attached funds.  At no time while the TRANS PACIFIC proceeding was pending did NAIAS appear in the action and/or request counter-security from Judge Stanton, pursuant to Supplemental Admiralty Rule E(7).  Clearly, the issue of counter-security ***should have been*** presented to Judge Stanton given that TRANS PACIFIC was in this district by having instituted the action (and there was *quasi in rem* jurisdiction over NAIAS by virtue of the attachment).  Rather than appear and demand counter-security before Judge Stanton, NAIAS waited until TRANS PACIFIC voluntarily dismissed its Rule B action on November 14, 2007, and then, two weeks later, utilized the *ex parte* nature of Rule B proceedings to attach $250,000 of TRANS PACIFIC assets being wire transferred.

In *Chiquita*, this Court vacated an attachment where the plaintiff there initiated a Rule B action against the defendant who already had a pending Rule B action against the plaintiff.  This Court held:

> Essentially, Bosse abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related Chiquita action arising out of the same facts and between the same parties.  The purpose of a maritime attachment is to "secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory. Given Bosse's knowledge of the pending Chiquita action, seeking an *ex parte* order of attachment in the Bosse action was an improper practice and showed a want of equity on the part of Bosse. Ultimately, Bosse's actions are not in accordance with the purpose of maritime attachments.  Therefore, GWF's motion to vacate is granted.

2007 U.S. Dist. LEXIS 75726, *26-27 (citations omitted).

While the TRANS PACIFIC Rule B action was not pending when NAIAS brought this proceeding, the equity principles articulated in *Chiquita* are equally applicable in this case.

---

[1] It should be noted that the rules of the LMAA do not allow a Claimant (*i.e.* TRANS PACIFIC) to obtain security from the Respondent (i.e. NAIAS) for their costs and legal fees (Cross Decl. ¶ 13).

NAIAS' action arises out of the same facts as that of the prior TRANS PACIFIC litigation and involves the same parties. NAIAS knew of the TRANS PACIFIC action, but deliberately waited two weeks after it was dismissed before initiating its own Rule B action. NAIAS should have requested counter-security from Judge Stanton. Clearly, the initiation of the NAIAS Rule B action was retaliatory and was designed to interfere with TRANS PACIFIC's business activities when the issue could have been easily resolved before Judge Stanton. As in *Chiquita*, NAIAS' action constitutes an abuse of the Rule B attachment process. As such, the instant attachment should be vacated.

<u>POINT II</u>

**PLAINTIFF HAS NOT MET ITS BURDEN TO SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED**

It is common ground that at a Rule E(4)(f) hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. *Salazar v. The Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegación, C.A.*, 169 F. Supp. 2d 1341, 1357-59 (M.D.Fl. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the Complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff...to show why the attachment should not be vacated"). The standard generally is that "the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment." *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, No. 05-7955, 2006 U.S. Dist. LEXIS 77033, *7-8 (S.D.N.Y. Oct. 23, 2006) (citation omitted).

To sustain its burden on a motion to vacate, the Plaintiff must demonstrate that: (a) it has a valid *prima facie* maritime claim against the defendant; b) the defendant cannot be found

within the district; c) the defendant has property within the district that has been restrained; and d) there is no statutory or maritime bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY*, 460 F.3d 434 (2d Cir. 2006); *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002); *Sonito*, 478 F. Supp. 2d 532.   NAIAS has not satisfied the first requirement identified by the Second Circuit, which is essential for the maintenance of a Rule B maritime attachment.

### POINT III

**A CLAIM SOLELY FOR LEGAL FEES AND COSTS THAT MIGHT BE AWARDED IN LONDON ARBITRATION PROCEEDINGS IS NOT A MARITIME CLAIM WITHIN THE PURVIEW OF RULE B**

Under English and American jurisprudence a claim based solely on potential costs in defending a maritime claim in arbitration is not a valid maritime claim.  Accordingly, the present attachment must be vacated.

**A.  Under English law arbitration costs do not constitute an admiralty claim**

NAIAS concedes in its Verified Complaint that the parties' dispute "shall be governed by English law and shall be referred to arbitration in London." (NAIAS Verified Complaint ¶8). Thus, in deciding whether NAIAS has asserted a valid *prima facie* admiralty claim against TRANS PACIFIC, our Court should look to English law.  *Sonito*, 478 F. Supp. 2d at 536 (vacating attachment under English law because "[t]he existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, in this case the law of the contract"); *T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d 310, 316 (S.D.N.Y. 2006) (vacating attachment because "the issue of whether the Charter Party requires an accrued cause of action . . . is a substantive legal question which will be decided under English law in the arbitration . . .").

Plaintiff has obtained a Rule B attachment of $250,000.00 as security for ONLY costs of defending Defendant's claims in London arbitration proceedings. These can only be awarded if NAIAS prevails in its defense of the TRANS PACIFIC claims in the arbitration. NAIAS' Verified Complaint reveals that NAIAS has not asserted any counter-claim for damage against TRANS PACIFIC in the London arbitration. (Also see Cross Decl. ¶11). While Plaintiff disingenuously cloaks its claim for costs (legal fees) with the admiralty mantra on the basis of the charter party agreement between the parties, NAIAS does not allege any breach of that C/P by TRANS PACIFIC. Under English law, the NAIAS' claim does not sound in admiralty. (Cross Decl, ¶16-20).

As Mr. Cross points out "the costs awarded to a successful party following an arbitration on a charter party are not damages awarded for claims under the charter party" and accordingly, they are not "admiralty claims." (Cross Decl., ¶17). Consequently, even assuming *arguendo* NAIAS was to successfully defend TRANS PACIFIC's claims and was awarded costs and legal fees, this claim would not be recognized in admiralty by an English court because it did not arise from the charter party agreement between TRANS PACIFIC and NAIAS. (Cross Decl. ¶19-20).

This is not a situation where NAIAS has asserted a claim for breach of the charter party by TRANS PACIFIC and in addition to that claim, NAIAS requests security for the costs of prosecuting same in arbitration. Judges of this District routinely grant such requests in a Rule B application because the claim for costs is **ancillary** to the claim for breach of a maritime agreement. Here, there is no independent maritime claim to which NAIAS' contingent claim for legal fees and costs can be appended. Accordingly, TRANS PACIFIC respectfully submits that Plaintiff cannot make a *prima faci*e showing that it possesses a valid maritime claim under English law. Thus, the attachment of TRANS PACIFIC's assets must be vacated and the action dismissed.

NYDOCS1/295053.1

7

**B.  Alternatively, under American law a claim for legal fees and costs is not a maritime claim**

It is clear from Point III above that English law disposes of the question being presented for this Court's adjudication and requires the vacatur of the attachment of TRANS PACIFIC's assets. Furthermore, an application of American law would lead to the same result.

The thrust of NAIAS' position is that its claim for arbitration legal fees and costs is "maritime" merely because NAIAS is defending a maritime claim of TRANS PACIFIC under the charter party. This position is self-evidently untenable under American law. *Pires v. Heller*, No. 04-9069, 2004 U.S. Dist. LEXIS 23871, *8 (S.D.N.Y. Nov. 24, 2004) ("Simply labeling these claims as 'maritime' does not make them so"). It is well settled that a breach of contract claim will invoke admiralty jurisdiction if the contract incorporates a uniquely maritime concern. *Fednav, Ltd. v. Isoromar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991); *Pires*, 2004 U.S. Dist. LEXIS 23871. As the Second Circuit has stated, "if the subject matter of the contract relat[es] *to a ship in its use as such, or to commerce or to navigation on navigable waters, or to some transportation by sea or to maritime employment*, it is fairly said to constitute a maritime contract." *Fednav*, 925 F.2d at 601.

There is nothing "uniquely maritime" concerning legal fees and costs incurred in the defense of a maritime claim being prosecuted in London arbitration. Such fees and costs do not relate to the use of a ship or to the navigation, business or commerce of the sea.

For example, in *Pires*, Plaintiff sued attorney Heller in State Court for breach of contract, breach of fiduciary duty, conversion and fraud. Heller had represented plaintiff *Pires* in pursuing an admiralty claim for damages sustained by *Pires* from leg amputations when his shipowner employer denied maintenance and cure. Heller brought third party claims of breach of

employment against plaintiffs' counsel (who had been Heller's associate at the time of the underlying maritime action) and removed the case to Federal Court invoking admiralty jurisdiction. In remanding the case to State Court, Judge Holwell stated that no "uniquely maritime concern" was involved in plaintiffs' claims which arose "out of [plaintiffs'] contracts with Heller regarding his legal fees or [his] co-counsel legal fees ***in connection with the underlying maritime action***." 2004 U.S. Dist. LEXIS 23871, *5 (emphasis supplied).  Judge Holwell also pointed out that Heller's claim was nothing but a breach of contract claim and thus, the parties' claims were "too tangential to maritime law to be considered 'maritime claims.'" *Id.* Differently put, simply because legal fees and costs may be incurred in prosecuting or defending a maritime claim/action, a claim for such legal fees is not thereby transformed into an admiralty claim. *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440, 443 (7th Cir. 1907) ("the mere fact that the event and measure of liability are referable to the charter party does not make the bond a maritime contract").

Similarly here, Plaintiff has attempted to transform a claim for defense costs and legal fees into a maritime claim on the basis that the underlying defense pertained to a maritime claim. There is no traditional maritime activity involved when NAIAS incurs legal fees and costs in arbitration and it is evident that NAIAS' English solicitors will not be undertaking any maritime service or business in so defending NAIAS. *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004) ("We have reiterated that the 'fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce'"); *Pacific Surety*, 151 F. at 443 (settled that "the contract articulated in a libel must be, directly and in essence, an obligation maritime in its nature, for the performance of maritime service or transactions, to confer jurisdiction").

Also buttressing TRANS PACIFIC's position that a claim based solely on legal defense costs is not maritime is American admiralty jurisprudence holding that a claim for legal fees does

not constitute a maritime lien on a vessel. *Gulf Marine and Industrial Supplies, Inc. v. M/V GOLDEN PRINCE*, 230 F.3d 178, 180 (5th Cir. 2000); *Bradford Marine, Inc v. M/V SEA FALCON*, 64 F.3d 585, 589 (11th Cir. 1989); *American Oil Trading, Inc. v. M/V SAVA*, 47 F. Supp. 2d 348, 353 (E.D.N.Y. 1999); *Patricia Hayes & Assocs. v. M/V BIG RED BOAT II*, No.00-6925, 2002 U.S. Dist. LEXIS 9867 (S.D.N.Y. May 31, 2002), *aff'd*, 339 F.3d. 76 (2d Cir. 2003). For example, in *Gulf Marine*, a law firm filed suit to establish a maritime lien on the sale proceeds of the vessel. The law firm argued that, under the Federal Maritime Lien Act ("FMLA"), the legal services it provided on behalf of the vessel constituted "necessaries" and its attorneys' fees constituted an enforceable maritime lien. The district court rejected the argument and on appeal the Fifth Circuit affirmed holding in no uncertain terms that:

> [The law firm] cites no cases classifying legal services as necessaries because there are none. The absence of precedent signifies the weakness of [the firm]'s position, since admiralty enjoys an unusually rich legal tradition and, more than nearly any other contemporary area of federal law, relies on venerable precedents where they exist. In fact, this Court has held that maritime liens do not secure attorney fees in cases predating the FMLA. Since Congress enacted the FMLA, courts have consistently held that legal services are not necessaries.

230 F.3d at 180 (citations omitted). Significantly, the Fifth Circuit Court of Appeals also rejected the law firm's argument that the legal services it provided were to release the vessel from arrest which enabled the vessel to perform its maritime functions:

> If legal services that protect vessels from seizure are "necessary" for the vessel to carry out its function, then all attorneys who defend ship owners from tort claims, tax claims, or any other type of claim will automatically hold a maritime lien for their fees.

230 F.3d at 181.

Here, NAIAS has erroneously assumed that to the extent its arbitration costs will be incurred in defending a maritime action, its claim for such costs must ***per force*** be maritime.

There is no such precedent under U.S. admiralty jurisprudence. Accordingly, TRANS PACIFIC respectfully requests that the Court grant the within motion in all respects.

**POINT IV**

**THE COMPLAINT SHOULD BE DISMISSED, AS THIS COURT LACKS
SUBJECT MATTER JURISDICTION**

Plaintiff has invoked this Court's admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. In doing so, NAIAS mislabeled a claim for only legal defense costs as a "maritime claim". If this Court accepts TRANS PACIFIC's position that such a claim does not sound in admiralty within the ambit of Rule B, it must also dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

The applicable standard for a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is the same as that of a Rule 12(b)(6) motion. A Federal Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would it to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In so doing, it must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained with the plaintiff's complaint as true. The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *Neitzke v. Williams*, 490 U.S. 329, 326-27 (1989). As the Second Circuit has stated:

> A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2001) (citations omitted).

Jurisdiction in this matter is premised upon the claim of NAIAS being a maritime claim under Rule 9(h) of the Rules of Civil Procedure and 28 U.S.C. §1333. Since under either English or American law a claim for legal fees and costs is not maritime, this Court lacks subject matter jurisdiction and the NAIAS' Complaint should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court grant the within motion, vacate the attachment of Defendant's assets, dismiss the Verified Complaint and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 11, 2007

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Defendant
TRANS PACIFIC CARRIERS CO. LTD.

By: _____
       James L. Ross (JR 6411)
       Manuel A. Molina (MM 1017)
       80 Pine Street
       New York, New York  10005
       (212) 425-1900

TO:    CHALOS, O'CONNOR & DUFFY, LLP
       Attorneys for Plaintiff
       366 Main Street
       Port Washington, NY  11050
       Attn:  Owen F. Duffy, Esq.