CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
NAIAS MARINE S.A.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NAIAS MARINE S.A.,

      Plaintiff,

               07 CV 10640 (PKL)

 v.

TRANS PACIFIC CARRIERS CO. LTD.,

      Defendant.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………..………....…ii

TABLE OF AUTHORITIES …………………………………………...................iii

PRELIMINARY STATEMENT...…………………..………….......……………….1

STATEMENT OF FACTS.………………………………….....................................2

LEGAL ARGUMENT….……………………………….……………………….….2

      I.      NAIAS DID NOT BRING THIS ACTION IN ORDER
             TO HARASS THE DEFENDANT, AND TRANS
             PACIFIC'S POINT I ARUGMENT IN THIS REGARD
             IS DUPLICITOUS……………………………………………………...2

      II.     U.S. FEDERAL LAW GOVERNS THE VALIDITY OF THE
             NAIAS ATTACHMENT……………………………………………......5

      III.    NAIAS PRESENTS A MARITIME, NOT ADMIRALTY,
             CLAIM AND, THEREFORE, THE ATTACHMENT OF
             TRANS PACIFIC'S PROPERTY TO OBTAIN SECURITY
             IN AID OF LONDON ARBITRATION IS VALID……………………..9

CONCLUSION.………………………….......................................................…...13

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd.,
    460 F.3d 434 (2d Cir. 2006)............................................................5, 6

Chiquita Int'l Ltd. v. M/V BOSSE,
    2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007).....................2, 3, 4, 5

Esso Standard (Switzerland) v. The S/S Arosa Sun,
    184 F. Supp. 124 (S.D.N.Y. 1960)........................................................6

Maersk, Inc. v. Neewra, Inc.,
    2006 U.S. Dist. LEXIS 73096, 2007 A.M.C. 2005 (S.D.N.Y. 2006)..............6

Maryland Tuna Corp. v. The MS Benares,
    429 F.2d 307 (2d Cir. 1970)................................................................6

North of Eng. Protecting & Indem. Ass'n v. M/V Nara,
    1999 U.S. Dist. LEXIS 22375, 2000 A.M.C. 681 (E.D. La. 1999)...............11

Orion Shipping & Trading Co. v Eastern States Petroleum Corp.,
    284 F.2d 419 (2d Cir. 1960)...............................................................10

Paramount Carriers Corporation v. Cook Industries, Inc.,
    1979 A.M.C. 875 (S.D.N.Y. 1979).......................................................10

Red Cross Line v Atlantic Fruit Co.,
    264 US 109, 68 L Ed 582, 44 S Ct 274 (1924).......................................10

Reibor International, Ltd. v. Cargo Carriers (KACZ-CO), Ltd.,
    759 F.2d 262 (2d Cir. 1985)................................................................6

Sea Route, Ltd. v. Nat'l Bag & Trading Co.,
    2007 U.S. Dist. LEXIS 70617 (E.D.N.Y. Sept. 24, 2007)..........................11

Seatrans Shipping Corp. v. Interamericas Marine Transport, Ltd.,
    1997 U.S. Dist. Lexis 5665 (S.D.N.Y. April 28, 1997)..........................10, 11

Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,
    2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. 2007).......................................7

T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,
    415 F.Supp.2d 310 (S.D.N.Y. 2006)...................................................6, 7

Ullises Shipping Corp. v. FAL Shipping Co.,
 415 F. Supp. 2d 313 (S.D.N.Y. 2006)..............................................................12

Winter Storm Shipping, Ltd. v. TPI,
 310 F.3d 263 (2d Cir. 2002)..............................................................................7

**STATUTES and RULES**

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
 Rule B................................................................................1, 2, 5, 6, 7, 8, 11, 12, 13

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
 Rule C................................................................................................................8

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
 Rule E................................................................................................................6

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
 Rule E(2)(b)............................................................................................10, 11, 13

**OTHER AUTHORITIES**

29 A.L.R. Fed. 325
 § 9 Arbitration..................................................................................................10

7A.J. Moore & A. Pelaez, MOORE'S FEDERAL PRACTICE para. B.03 (2d ed. 1983).........6

29-704 Moore's Federal Practice – Civil § 704App.01(1)(c).....................................11

29 James W.N. Moore, MOORE'S FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005)........

## PRELIMINARY STATEMENT

Plaintiff, NAIAS MARINE S.A. (hereinafter "NAIAS"), by and through its undersigned counsel, Chalos, O'Connor & Duffy, LLP, respectfully submits this Memorandum of Law in Opposition to Defendant TRANS PACIFIC CARRIERS CO. LTD.'s Motion, brought on by an Order to Show Cause dated December 11, 2007, for an Order vacating the Process of Maritime Attachment and Garnishment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "Rule B") and to Dismiss the Complaint against Defendant TRANS PACIFIC CARRIERS CO. LTD. (hereinafter "TRANS PACIFIC") (hereinafter collectively referred to as the "Motion to Vacate").

In the case at hand, the Plaintiff NAIAS adequately alleged a *prima facie* maritime claim against TRANS PACIFIC, the Defendant TRANS PACIFIC is not found within the district and property belonging to the Defendant TRANS PACIFIC within the district has been properly attached. Contrary to the incongruous, inequitable and strained arguments presented by TRANS PACIFIC, the vessel Owner has the same right to employ the Rule B procedure to obtain security from TRANS PACIFIC for claims identical to those that TRANS PACIFIC used the Rule B procedure to obtain security for. As such, there is absolutely no valid basis for this Court to Vacate the Process of Maritime Attachment and the Defendant's Motion must be denied.

## STATEMENT OF FACTS

The facts pertaining to the instant Motion to Vacate the Process of Maritime Attachment and Garnishment and Dismiss the Complaint are more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, dated December 14, 2007. Rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth the accompanying Attorney's Affidavit. Citation to the Attorney's Affidavit will refer to "Duffy Affidavit at ¶ -."

## LEGAL ARGUMENT

### POINT I

### NAIAS DID NOT BRING THIS ACTION IN ORDER TO HARASS THE DEFENDANT, AND TRANS PACIFIC'S POINT I ARUGMENT IN THIS REGARD IS DUPLICITOUS

When a party presents an argument that another party has abused the Rule B attachment process, that party should be expected to come to court with its own hands clean. In its attempt to disparage the propriety of the NAIAS attachment, Trans Pacific preliminarily relies on this court's decision in Chiquita Int'l Ltd. v. M/V BOSSE and, from there, goes on to argue that the attachment should be vacated because NAIAS' efforts to place itself on equal footing in respect of security is simply harassment and constitutes an abuse of the Rule B attachment process. When the facts are properly considered, the paradox of the argument is exposed and the argument becomes untenable. Indeed, careful scrutiny of the facts demonstrates that TRANS PACIFIC's harassment argument rings hollow and, if anything, the position taken by TRANS PACIFIC is the one that shows a want of equity.

As an initial point, NAIAS recognizes that Chiquita Int'l Ltd. supports the

2

proposition that it is not proper for a party to seek security *ex parte* where an earlier filed case arising out of the same events, between the same parties, and before the same court is still pending,. 2007 U.S. Dist. LEXIS 75726 *25 (S.D.N.Y. Oct. 11, 2007). That is the holding of Chiquita Int'l Ltd., but the instant case is, however, absolutely distinguishable from Chiquita Int'l Ltd. in one fundamental respect which cannot be as easily dismissed as TRANS PACIFIC would suggest. That fundamental difference is that, when NAIAS initiated this action, the original TRANS PACIFIC case had been dismissed voluntarily by TRANS PACIFIC, NAIAS never appeared in that action and there was no action still pending when NAIAS filed its suit in the Southern District of New York to obtain comparable security from TRANS PACIFIC. *See*, Duffy Affidavit at ¶s 40 & 46.

In the previous case initiated by TRANS PACIFIC, NAIAS' property, in the amount of $711,605.60, was restrained on a Thursday. *See*, Duffy Affidavit at ¶ 30. NAIAS, thereafter, made immediate arrangements to negotiate with TRANS PACIFIC to post an agreeable form of security in an amount that accurately reflected TRANS PACIFIC's true claim and the security was eventually provided the following Wednesday and TRANS PACIFIC voluntarily dismissed the case because TRANS PACIFIC had not appeared in the case. *See*, Duffy Affidavit at ¶s 31, 32 & 40. At the time, NAIAS needed to expedite the release of its funds for commercial reasons and, because TRANS PACIFIC had already ignored NAIAS' request for security on its own defense costs, it was not practical for NAIAS to wait around and make a motion for counter security in that case and, indeed, it was not even certain that it was going to defend the claim presented by TRANS PACIFIC at that point. *See*, Duffy Affidavit at ¶s 31, 43 & 46. Instead, it was only after its solicitor presented a preliminary advice that the TRANS

PACIFIC claim should be defended that NAIAS initiated this action to obtain security for its costs in a situation where TRANS PACIFIC already had security for its costs in connection with a claim of dubious merit. *See,* Duffy Affidavit at 43, 44 & 45. Consequently, the situation at hand is completely different from the situation considered in Chiquita Int'l Ltd., and Chiquita Int'l Ltd. is not a proper precedent against which NAIAS' claim should be examined.

Separate and apart from the fact that Chiquita Int'l Ltd. is a different case, it is almost incredible that TRANS PACIFIC is arguing harassment, abuse of process and want of equity when its own actions and motives are suspect. Consider, for example, that NAIAS offered to provide TRANS PACIFIC with security voluntarily if TRANS PACIFIC would secure NAIAS' costs in the same manner that NAIAS was securing TRANS PACIFIC's costs. *See,* Duffy Affidavit at ¶s 37 to 39. Did TRANS PACIFIC deal with that request in an equitable manner? The answer is absolutely no. TRANS PACIFIC completely ignored NAIAS and, instead, went ahead and filed suit in New York to strong arm NAIAS into submission. *See,* Duffy Affidavit at ¶39. In filing the suit, and while it may not have had any obligation to do so, TRANS PACIFIC, nevertheless, failed to present the court with the full factual picture and mention that it had sent a notice that it was redelivering the M/V STENTOR. *See,* Duffy Affidavit at ¶ 24. Instead, when it applied *ex parte* for a Process of Maritime Attachment in the amount of $1,558,735.00, it alleged that it had it had "exercised its option for a third voyage." *See,* Duffy Affidavit at Ex. B ¶ 7. Furthermore, and much more egregious, TRANS PACIFIC used, and continued to serve, a Process of Attachment that it knew had been issued on an incorrect and inflated claim to restrain NAIAS's funds. In this regard, the

4

day after TRANS PACIFIC's claim was filed (and most probably before the Process of Attachment could have even been personally served on the respective garnishees), NAIAS returned the sum of $517,500 to TRANS PACIFIC which NAIAS recognized had not been earned. *See*, Duffy Affidavit at ¶ 34. That payment reduced TRANS PACIFIC's principal claim by half and, yet, there is no indication on the court's docket to indicate that TRANS PACIFIC advised the court, corrected or amended its complaint. It is, therefore, self evident that TRANS PACIFIC was continuing to serve an incorrect Process of Attachment from October 27th through November 8th when it eventually restrained funds belonging to NAIAS. *See*, Duffy Affidavit at ¶ 34.

To conclude on this point, the instant action is not duplicative of another pending action as was the case in Chiquita Int'l Ltd., but, instead, the argument presented by TRANS PACIFIC with respect to being harassed and retaliated against is completely duplicitous. If any party's actions demonstrate a want of equity, it is the actions of TRANS PACIFIC and not NAIAS.

### POINT II

### U.S. FEDERAL LAW GOVERNS
### THE VALIDITY OF THE NAIAS ATTACHMENT

The defendant, TRANS PACIFIC, has gone to great lengths to argue that this Court should be bound by English law on the question of whether the plaintiff, NAIAS, has met the requirements for a Rule B attachment consistent with the guidelines set forth the Court of Appeals decision entitled Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, 460 F. 3rd 434 (2nd Cir. 1006). In Aqua Stoli, the Court of Appeals wrote:

> We therefore hold that, in addition to having to meet the filing and service

5

>requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

460 F. 3rd at 445 (footnotes omitted).

Consistent with Aqua Stoli, Rule B of the Admiralty Rules permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam*. *See*, 7A.J. Moore & A. Pelaez, MOORE'S FEDERAL PRACTICE para. B.03 (2d ed. 1983). In this Circuit, however, it is the rule that federal law governs all questions concerning the validity of a Rule B attachment. *See*, Reibor International, Ltd. v. Cargo Carriers (KACZ-CO), Ltd., 759 F.2d 262 (2d Cir. 1985), *citing* Maryland Tuna Corp. v. The MS BENARES, 429 F.2d 307, 321 (2d Cir. 1970) *and* Esso Standard (Switzerland) v. The S/S AROSA SUN, 184 F. Supp. 124, 127 (S.D.N.Y. 1960).

Additionally, the attachment of funds pursuant to Rule B is considered a procedural remedy and federal law applies to procedural issues in admiralty cases. *See*, T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 314 (S.D.N.Y. 2006) (noting that "Rule B [attachment] is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law"); *see also*, Maersk, Inc. v. Neewra, Inc., No. 05-4356, 2006 U.S. Dist. LEXIS 73096, 2006 WL 2854298 (S.D.N.Y., Oct. 6, 2006) (noting that attachment is a procedural remedy).

Federal courts, in applying Rule B have consistently held that federal law should govern in the first instance. This is the rule even in cases where the underlying contract is subject to foreign law. For example, in T & O Shipping, Ltd. v. Lydia Mar Shipping Co.

S.A., *cited supra*, Judge Sheindlin stated:

> when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law. For example, in a recent case in this district, where English law was to be applied to the substantive questions in arbitration, the court applied federal law to the motion to vacate.

415 F.Supp.2d 310, 314 (S.D.N.Y. 2006)(citing to the Second Circuit's decision in Winter Storm, 310 F.3rd at 275, and also finding that "the law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable."). As such, because the attachment of funds at issue in the case at hand was made pursuant to Rule B of the federal rules, federal law governs whether the funds are attachable.

Under these circumstances, the Court should disregard the defendant's argument that a claim for costs does not constitute an admiralty claim under the substantive law of the contract, i.e. English law, and the Court should also disregard declaration of the expatriate solicitor, Max Cross. The defendant's argument and, indeed, the argument made by Max Cross offer nothing. Instead, they simply seek to obfuscate the elemental point that NAIAS' claim for the costs to defend an arbitration that will take place in London arises as the result of a dispute under a charter party for the hire of NAIAS' vessel, the M/V STENTOR. The charter party is a maritime contract under American law, *see*, Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 2007 U.S. Dist. LEXIS 19531 * 9 (S.D.N.Y. 2007), and, therefore, a claim springing from that contract is a maritime claim. *See,* Sonito Shipping at *10, (Judge Haight determined that a claim for contingent indemnity was an "admiralty claim," but vacated attachment nevertheless on the basis that the claim had not yet accrued under the substantive law of the contract and, therefore, the claim was not ripe.). In the case at hand, NAIAS' claim is a maritime claim

and it is ripe because TRANS PACIFIC has initiated the arbitration and NAIAS is defending the claim. *See*, Duffy Affidavit at ¶s 42 to 45. It is no less ripe than TRANS PACIFIC's claim for the costs to prosecute the claim which it secured before it even initiated the arbitration in London.

Separate and apart from that elemental point, it should be recognized that TRANS PACIFIC's English solicitor seeks to stretch the argument to absurd extremes and his position is certainly not consistent with American practice. For example, Max Cross quite clearly, *and unconditionally*, declares that the only "admiralty" claims under English law are those that fall into the category that "entitle a Claimant to bring an action IN REM against a vessel." *See*, Declaration of Max Cross, ¶ 16, dated December 11, 2007 at Hong Kong. Surely, that it is not the position under American law. If it were, then Judge Stanton should have considered that TRANS PACIFIC's *in personam* claim against NAIAS for breach of charter party did not provide a proper basis for a Rule B attachment insofar as it was not an IN REM claim against the vessel and, therefore, not an "admiralty" claim under the substantive law of the contract, i.e. English law. Since, the American maritime attachment procedure clearly limits the use of the maritime attachment procedure to "*in personam*" actions, as opposed to IN REM claims which are covered by Supplemental Rule C, no American practitioner would ever advance such an absurd argument. When all things are considered, we submit to this Court that the arguments raised in connection with English law and in the Max Cross declaration, in particular, are simply too far beyond the pale of the Supplemental Rules, which specifically apply to Admiralty *or Maritime claims*, for this Court to seriously consider them.

Suffice it to say that solicitor Cross' declaration could be further picked apart and, particularly so, in connection with his citation to The BUMBESTI decision and his convoluted logic that The BUMBESTI somehow sets forth the proper and applicable legal principle for the case now before this Court in New York. In his effort to make a point based on the holding of The BUMBESTI, solicitor Cross mixes the apples from that case, involving a claim to enforce an arbitration award with the arrest of a vessel, with the oranges of this case, involving an attachment for security in aid of London arbitration on a maritime claim. The effort is strained and unpersuasive. There is, however, no need to go into that further because the bottom line is that, while English law may apply to the merits of the disputes, solicitor Cross (i.e. a solicitor from the same firm that ignored NAIAS' proposal to provide security voluntarily) has no qualifications to comment on the dispositive issue in this case, which is: Whether the NAIAS attachment to obtain security for costs to defend a maritime claim is reasonable under a proper construction of the American rules for Admiralty or Maritime claims and, especially so, in circumstances where the defendant has already used the Rule B maritime attachment process against the plaintiff to obtain security for identical claims against the Plaintiff, NAIAS. Equity demands that the answer be yes.

## POINT III

### NAIAS PRESENTS A MARITIME, NOT ADMIRALTY, CLAIM AND, THEREFORE, THE ATTACHMENT OF TRANS PACIFIC'S PROPERTY TO OBTAIN SECURITY IN AID OF LONDON ARBITRATION IS VALID

Whatever the law may be in England, U.S. Courts have long recognized that arbitration clauses in maritime contracts fall under a court's admiralty and maritime

9

jurisdiction. *See*, Red Cross Line v Atlantic Fruit Co., 264 US 109, 68 L Ed 582, 44 S Ct 274 (1924), Orion Shipping & Trading Co. v Eastern States Petroleum Corp., 284 F.2d 419 (2d Cir. 1960) *and* 29 A.L.R. 325 Fed. §9 "Arbitration."

Furthermore, and perhaps most persuasive, the U.S. Supplemental Rules for Admiralty or Maritime Claims specifically recognize that a maritime claimant has a right to security for costs to be incurred in arbitration. In this regard, Rule E(2)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions specifically covers "Security for Costs." Rule E(2)(b), which is to be applied by the U.S. District Courts in cases of Admiralty or Maritime claims, specifically provides as follows:

> b) *Security for Costs*. Subject to the provisions of Rule 54(d) and of relevant statutes, the court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court.

F.R.C.P., Supplemental Rules for Admiralty or Maritime Claims, Rule E(2)(b).

Any logical reading of that rule will bring one to the conclusion that a U.S. District Court, sitting in Admiralty, has the authority to require a party to post security for costs of arbitration. Indeed, section 8 of the U.S. Federal Arbitration Act authorizes a party to attach another party's property in the United States for the purpose of obtaining security for arbitration. Paramount Carriers Corporation v. Cook Industries, Inc., 1979 A.M.C. 875 (S.D.N.Y. 1979). In Seatrans Shipping Corp. v. Interamericas Marine Transport, Ltd., 1997 U.S. Dist. Lexis 5665 (S.D.N.Y. 1997), the plaintiff attached the

defendant's property pursuant to Rule B, even though the claim was going to arbitrated outside of the Southern District of New York. The court held: "The fact that this action is arbitral, so that it will not, apart from proceedings relating to the Rule B attachment and entry of judgment on the award, be litigated in this district, and that the underlying dispute is not connected with this district, are not relevant. Rule B contains no venue limitation. It may be used for the sole purpose of obtaining security." Seatrans Shipping Corp., 1997 U.S. Dist. Lexis 5665, at *2 & 3. Like the situation in Seatrans Shipping, the claims between NAIAS and TRANS PACIFIC are arbitral, the attachment was initiated to obtain security and this Court will retain jurisdiction for entry of judgment on the eventual arbitration award. In such circumstances, any logical reading of Rule E(2)(b) demonstrates that the Court should maintain the attachment so that NAIAS has security for its claim for costs in the same manner as TRANS PACIFIC already has.

The rule is consistent with the long history of the courts sitting in admiralty applying equitable principles. *See*, 29-704 Moore's Federal Practice – Civil § 704App.01(1)(c). Indeed, the courts that have written on the issue of arbitration costs have stated without question that a plaintiff may "obtain security for the ... anticipated costs for subsequent arbitration proceedings." Sea Route, Ltd. v. Nat'l Bag & Trading Co., 2007 U.S. Dist. LEXIS 70617, *1 (E.D.N.Y. Sept. 24, 2007); *see also*, North of Eng. Protecting & Indem. Ass'n v. M/V NARA, 1999 U.S. Dist. LEXIS 22375, *10, 2000 A.M.C. 681 (E.D. La. 1999) (court ruled that plaintiff's requested amount of security, which included the amount of plaintiff's claim and the estimated costs of English arbitration, was just). Even Defendant TRANS PACIFIC itself noted in its Memorandum of Law that "Judges of this district routinely grant [security for the costs of arbitration]

requests in a Rule B action." *See*, TRANS PACIFIC's Memorandum of Law at page 7. In fact, TRANS PACIFIC requested, and was granted arbitration costs in the same amount in its prior case where it was the plaintiff and NAIAS was the defendant. *See*, Affidavit of Duffy at ¶s 27 to 29.

Now, however, Defendant TRANS PACIFIC makes the argument that plaintiffs can be awarded security for arbitration costs only because their claims are "ancillary." *See*, TRANS PACIFIC's Memorandum of Law at page 7. Unfortunately for TRANS PACIFIC, it is not able to cite to any precedent for that unsupported generalization and, therefore, the proposition amounts to nothing more than wishful thinking on the part of TRANS PACIFIC. However, the logic of TRANSPACIFIC's argument on this point is completely undercut with reference to the decision entitled Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 313 (S.D.N.Y. 2006). In Ullises, the court granted countersecurity for attorneys' fees only, absent a counterclaim for damages because FAL's claim for security for attorney's fees related to London litigation that was inextricably intertwined with the original maritime claim that was the subject of the London litigation. 415 F. Supp. 2d at 329. In other words, the claim for attorney's fees was considered to be a maritime claim for purposes of counter-security and the court directed the plaintiff to post counter-security for such claims. On the basis of that precedent, this Court should find that NAIAS has presented a maritime claim and, consistent with the equitable principles of U.S. admiralty jurisdiction, NAIAS should be entitled to use the Rule B procedure to obtain security for its claim in a situation where it is not presenting an affirmative claim for breach of charter, but is, instead, defending a dubious claim for breach of a charter party.

Instead of allowing the absurd result that TRANS PACIFIC argues for, this Court should find that Plaintiff NAIAS has shown cause, pursuant to Rules B and E(2)(b) of the Supplemental Rules, *supra*, why the restraint of the funds of TRANS PACIFIC is reasonable, the Court should deny the motion to vacate the Process of Attachment and the Court should continue and retain jurisdiction over this matter until the conclusion of the arbitration in London has been reduced to a judgment.

## CONCLUSION

The Defendant, TRANS PACIFIC, was permitted to utilize the Rule B maritime attachment procedure to obtain security for the costs and fees it estimates it will incur to prosecute a maritime claim of dubious merit in London arbitration. Fundamental fairness, and a proper construction of the Supplemental Rules, demands that the Plaintiff, NAIAS, is entitled to use the same rules to secure its identical claims against TRANS PACIFIC. Accordingly, the Motion to Vacate the Process of Maritime Attachment issued by this Court on November 28, 2007 must be denied.

Dated:   Port Washington, New York
         December 14, 2007

                                CHALOS, O'CONNOR & DUFFY LLP
                                Attorneys for Plaintiff,
                                NAIAS MARINE S.A.

                       By:      _____
                                Owen F. Duffy (OD-3144)
                                366 Main Street
                                Port Washington, New York 11050
                                Tel:     516-767-3600
                                Telefax: 516-767-3605