542-07/JLR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NAIAS MARINE S.A.,

                      Plaintiff,

   -against-

TRANS PACIFIC CARRIERS CO. LTD.,

                      Defendant.
------------------------------------------------------------x

07 CIV 10640 (PKL)

**AFFIDAVIT OF
JAMES L. ROSS**

STATE OF NEW YORK  )
                            ) ss:
COUNTY OF NEW YORK)

      JAMES L. ROSS, being duly sworn, states as follows:

      1.    I am a partner with Freehill Hogan & Mahar, LLP, attorneys representing Defendant TRANS PACIFIC CARRIERS CO. LTD. (hereinafter referred to as "TRANS PACIFIC"). I am admitted to practice before this Court and am fully familiar with the course of this litigation. I submit this Affidavit in further support of TRANS PACIFIC's motion to vacate the Rule B attachment and dismiss the Complaint of Plaintiff NAIAS MARINE S.A. ("NAIAS"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule E(4)(f) of the Supplemental Admiralty Rules.

      2.    NAIAS has asserted certain factual allegations that are inaccurate and must be corrected. Contrary to NAIAS' contention that NAIAS did not know it would demand countersecurity from TRANS PACIFIC until it had received advice from its London counsel on November 14, 2007, the contemporaneous email correspondence shows that the issue of security was raised about one month before the TRANS PACIFIC attachment proceeding and that NAIAS had demanded countersecurity six days before

TRANS PACIFIC even commenced its Rule B action. In response to TRANS PACIFIC's demand for security, NAIAS, on <u>October 19, 2007</u>, purportedly agreed to provide security on the condition, *inter alia*, that TRANS PACIFIC also post countersecurity for NAIAS' "legal costs to defend." (Exhibit C annexed hereto). In fact, that same conditional offer was reiterated by NAIAS only a few days later on October 24. (Exhibit D annexed hereto). It is therefore clear that NAIAS had ample time to make a request for countersecurity before Judge Stanton while TRANS PACIFIC's Rule B action was pending from October 25 through November 14, 2007.

3. As the unrebutted declaration of Mr. Max Cross demonstrates, NAIAS had no justification to demand, *inter alia*, countersecurity for defense costs (Declaration of Max Cross, dated December 11, 2007 ("Cross Decl."), ¶¶12-15). Pursuant to the London Maritime Arbitrators Association ("LMAA") Rules, to which NAIAS agreed to be bound as per the parties maritime contract of charter party, the correct procedure for seeking security for defense costs is to make the request to the Tribunal in the arbitration itself ***but only after*** NAIAS has served its Defence Submissions. (Cross Decl., ¶14).

4. In fact, despite TRANS PACIFIC's repeated demands for security, NAIAS did not provide security (See Exhibit E annexed hereto). Indeed, the need for TRANS PACIFIC to obtain security became all the more urgent when TRANS PACIFIC learned that NAIAS had agreed to sell the M/V STENTOR, which may have been the only asset of NAIAS. It was not until after TRANS PACIFIC arrested the *STENTOR* in Singapore on November 11, 2007 that NAIAS provided security by way of an HSBC Letter of Guarantee on November 13, 2007. (Exhibit E annexed hereto).

5. Also, NAIAS erroneously claims that TRANS PACIFIC overstated its claim for damages in its October 25, 2007 Complaint. (Duffy Aff., ¶33). This factual assertion is also inaccurate because NAIAS admits that the funds representing hire paid but not earned were not remitted by NAIAS until after October 26 (Affidavit of Owen F. Duffy, dated December 14, 2007, ("Duffy Aff."), ¶34). Crucially, while NAIAS complains that TRANS PACIFIC served the writ of attachment in excess of what it was entitled to claim, such protestations ring hollow because it is undisputed that TRANS PACIFIC never attached any property of NAIAS in excess of its proper claim. The attached funds in the Judge Stanton litigation were $711,605.60 (Duffy Aff. ¶30), but the total security provided by NAIAS was $978,238.00. (Duffy Aff., Exhibit C). As important, at no time did NAIAS appear before Judge Stanton to complain about the validity or reasonableness of TRANS PACIFIC's attachment.

6. The foregoing chronology of events demonstrates that TRANS PACIFIC acted with clean hands at all times when it demanded security from NAIAS. However, NAIAS forestalled the furnishing of security and demanded countersecurity for its defense costs well before TRANS PACIFIC was forced to arrest NAIAS' vessel and commence Rule B proceedings to protect its rights.

7. Finally, instead of submitting English law evidence, NAIAS has resorted to mischaracterize Mr. Cross' legal opinion and to misinterpret English law by "commenting" that the English law's definition of an admiralty claim is confined to *in rem* actions against a vessel, and hence contrary to the American law's definition which also encompasses *in personam* actions. As **THE BUMBESTI** case reveals, however, admiralty claim under a charter party can be commenced either *in personam* or *in rem*

pursuant to Section 20(2)(h) of the Supreme Court Act 1981. This Section clearly establishes that, under English law, a claim is "maritime" so long as it arises out of "any agreement relating to the carriage of goods in a ship or to the use or hire of a ship..." (See Cross Decl., **THE BUMBESTI,** page 1, Exhibit B). Thus, NAIAS' view, through the eyes of its American counsel, is mistaken.

DATED:   New York, New York
         December 17, 2007

                                            _____
                                                  JAMES L. ROSS

Subscribed to and sworn before
me this 17th day of December 2007.

_____
NOTARY PUBLIC

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

4

# EXHIBIT C

**Sena Chan**

| | |
|---|---|
| From: | ??? [dplim@tpckr.com] |
| Sent: | 20 October 2007 01:32 |
| To: | Max Cross |
| Cc: | Lee, Connie; Rory Macfarlane; dplim@tpckr.com |
| Subject: | Fw: MV.'Stentor' |
| Importance: | High |

Dear Max,

The followings are received from owners. Please let us know how to respond.

Looking forward to hearing from you,

Best regards / D. P. Lim

> ----- Original Message -----
> From: "David Stott" <David.Stott@clarksons.com>
> To: <j@tpckr.com>
> Sent: Friday, October 19, 2007 9:40 PM
> Subject: MV.'Stentor'
>
>
>
> J / David
>
>
> FM OWNERS
>
> QUOTE
>
> RE: STENTOR / TPC - C/P 14/08/2007
> ==
>
> OWNS REFER TO CHRS LAST AND CHRTS WILL RECALL THAT FOLLOWING CHRTS
> REDELIVERY NOTICE SERVED IN ACCORDANCE WITH THE GOVERNING C/P
> OWNS DID PROCEED AND FIX THE VSL ELSEWHERE.
>
> CHRTS WERE NOTIFIED IN GOOD TIME AND OWNS ARE SURPRISED TO HEAR THAT
> CHRTS HV FIXED THE VSL EVENTHOUGH THEY KNEW THAT THEY DID NOT CONTROL
> THE VESSEL.
>
> OWNS HV ADVISED CHRTS THAT THEY ARE PREPARED TO PROVIDE SECURITY
> TO CHRTS FOR THEIR ALLEGED DAMAGES PROVIDED OFCOURSE CHRTS TO PROVIDE
> COUNTER SECURITY FOR OWNS LEGAL COSTS TO DEFEND CHRTS ALLEGED CASE.
>
> IN THE MEANTIME OWNS NOTE THAT CHRTS HV QUANTIFIED THEIR DAMAGES AND
> OWNS SHALL BE GRATEFUL TO RECEIVE A BREAKDOWN THEREOF TOGETHER WITH A
> COPY OF THE C/P OF THE CLEAN FIXTURE THEY REFER THEREIN FOR THE
> CONSIDERATION OF OWNS LEGAL CONSULTANTS.
>
> LOOK FORWARD HEARING FM CHRTS AT THEIR EARLIEST.
>
> B.REGARDS
>
> UNQUOTE
>
> Best regards
> David Stott
> Clarkson Ops, Melbourne
>
> +
>
>
> This email (including any attachments) is confidential and may also be
privileged. It is intended solely for the use of the named addressee(s). If you

1

are not the intended recipient, you may not copy, forward, disclose or otherwise use this email or any of its attachments - please notify the sender immediately and then delete this e-mail and any attachments.
>
> Whilst we have taken reasonable precautions to ensure that this e-mail and any attachment(s) has been checked for viruses, we cannot guarantee that they are virus-free. We do not accept liability for any damage sustained as a result of viruses and you should carry out your own virus checks.
>

2

# EXHIBIT D

HKGuest2

From: Clarkson Melbourne [ops.australia@clarksons.com]
Sent: 24 October 2007 07:11
To: Trans Pacific Carriers Co., Ltd.
Subject: Fw: LgINT Message (REF:07CE71800)

```
TO..: "Trans Pacific Carriers Co., Ltd."
ATTN: Mr J Kim
FROM: Clarkson Melbourne Pty Ltd (Ops Dept.)
DATE: 24-OCT-2007 09:10
MSG.: 3163014


Tel: + 61 3 9867 6800    Fax: +61 3 9867 6622

J / David

FM OWNERS

QUOTE


REF: M/V STENTOR / TPC
-----------------------

OWS CONFIRM RECEIPT OF USD.505,164.94.

ON ANOTHER NOTE OWS MUST ADVISE CHARTS FOR CLARIFICATION PURPOSES
THAT WHAT BROUGHT THE C/P TO A RIGHTFUL CONCLUSION AND IN ACCORDANCE
WITH THE C/P TERMS IS CHARTS REDELIVERY NOTIFICATION AND OWS REFIXING
OF VSL.

OWS WOULD NOT HAVE REFIXED THE VSL IF CHRTS HAD NOT SERVED THEIR REDELY
NOTICE ENTIRELY IN ACCORDANCE WITH THE C/P. AS FAR AS SECURITY IS
CONCERNED OWS HAVE STATED THEIR POSITION.
ARE CHARTS PREPARED TO PUT UP COUNTER SECURITY FOR OWS COSTS TO
DEFEND CHARTS CLAIM?

FURTHER OWS HAVE REQUESTED CHARTS TO PROVIDE COPY OF THE C/P OF THE
NEXT BUSINESS THEY ALLEGEDLY CONCLUDED FOR THE VSL AS PER THEIR
EARLIER MESSAGE.
THIS HAS BEEN REQUESTED AS IT WILL REALLY ENABLE THE PARTIES TO MOVE
FORWARD.

FINALLY OWS NOTE THAT CHARTS DO NOT INTEND TO REDELIVER THE VSL WITH
BUNKERS AS ON DELIVERY.
CHARTS WILL APPRECIATE THAT OWS WILL ARRANGE TO BUNKER THE VSL FOR
THEIR OWN ACCOUNT AND TO THE EXTENT THE BUNKERS PRICES ARE IN EXCESS
OF THOSE IN THE C/P CHARTS WILL BE CALLED UPON TO PAY THE DIFFERENCE.

OWS LOOK FORWARD TO HEAR FROM CHARTS AND RECEIVE THE REQUESTED
DOCUMENTS.

BEST REGARDS

UNQUOTE



Best regards
David Stott
Clarkson Ops, Melbourne
Email: ops.australia@clarksons.com
Office Tel: +61 3 9867 6800
Mobile Tel: +61 413 275 676

+
```

1

5

# EXHIBIT E

**Rory Macfarlane**

**From:** Max Cross
**Sent:** 13 November 2007 12:36
**To:** 'LEEWARD CONSULTANCY LTD'
**Cc:** Rory Macfarlane
**Subject:** RE: STENTOR

We refer to your email.

Our clients have been trying unsuccessfully to obtain security by agreement with Owners / your office for the best part of a month. This is against the background of the Owners having agreed to sell the vessel to Genco, which makes the provision of security all the more urgent. The vessel has been arrested because of Owners' failure to provide security. We are sorry that you consider an arrest to be "unethical". It is not.

We were contacted late last night by Richards Butler who informed us they had instructions from Owners to arrange for the release of the arrest. We informed them that we have instructions to negotiate a quick release and would be in the office and ready to discuss what is required from 09.00am. At the time of writing (12.30pm) they have not tried to contact us further. The release papers are prepared and ready to be signed at short notice, but we await hearing from Richards Butler so that the parties can agree on the security arrangements.

Regards

Max Cross
Ince & Co

---

**From:** LEEWARD CONSULTANCY LTD [mailto:nicholas@softway.gr]
**Sent:** 12 November 2007 19:26
**To:** Rory Macfarlane
**Subject:** Re: STENTOR

Dear Sirs,

We refer to our exchanges and we are now astonished to hear from our clients that the vessel has been arrested in Singapore.

We must protest on their behalf in the strongest possible terms against this reckless, unethical and unprofessional conduct of yours. You have not responded to our last at all and without any warning you proceeded without taking into consideration that vessel is fully ladden and in the middle of performing commercial obligations to third parties.

We wait to hear from you at your earliest. Are your clients prepared to accept a bank guarantee governed by English law and being deliverable to your office in Piraeus? Do you insist upon your most unreasonable figure of security?

Awaiting to hear by return.

Regards/N.Pantelias
LEEWARD CONSULTANCY LTD

I

15/12/2007