542-07/ROSS

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, New York 10005
(212) 425-1900

James L. Ross (JR6411)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NAIAS MARINE S.A.,

**07 CV 10640 (PKL)**

Plaintiff,

- against -

TRANS PACIFIC CARRIERS CO. LTD.,

Defendant

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TRANS PACIFIC CARRIERS CO. LTD.'S MOTION TO VACATE THE RULE B ATTACHMENT OF THE PLAINTIFF AND DISMISS THE COMPLAINT**

FREEHILL HOGAN & MAHAR,LLP
Attorneys for Defendant TRANS PACIFIC CARRIERS CO. LTD.
80 Pine Street
New York, New York 10005
(212) 425-1900

James L. Ross
Manuel A. Molina
Of Counsel

Defendant, TRANS PACIFIC CARRIERS CO. LTD. ("TRANS PACIFIC"), through its attorneys, Freehill Hogan & Mahar, LLP, hereby submits this Reply Memorandum of Law in response to the opposition Motion papers of Plaintiff NAIAS MARINE S.A. ("NAIAS") and in further support of its motion to vacate the Rule B attachment and dismiss the Complaint of Plaintiff NAIAS pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule E(4)(f) of the Supplemental Admiralty Rules.

**PRELIMINARY STATEMENT**

NAIAS' opposition Motion papers bombard the Court with irrelevant, inaccurate factual allegations and inapposite legal authorities to distract the Court's attention from the simple dispositive issue for adjudication: Is a claim solely for potential defense costs in London arbitration an admiralty or maritime claim within the purview of Rule B?

While NAIAS has the burden of proof, it has sidestepped the issue by arguing that because TRANS PACIFIC obtained security for its maritime claim, which included costs of prosecuting same, NAIAS' claim for defense costs is maritime. Such an argument is belied by the applicable English and American jurisprudence referred to in TRANS PACIFIC's moving Memorandum of Law.

By failing to provide evidence under English law, the law of the contract at issue, NAIAS has not met its burden of proof. Further, it is undisputed that in attaching Defendant's funds, NAIAS violated the London Maritime Arbitration Association ("LMAA") Rules, by which it agreed to be bound. These Rules required NAIAS to request countersecurity for costs to the Arbitration Tribunal only ***after*** it had presented its Defense Submissions. To this very date, NAIAS has made no such submission nor asserted any counterclaim for damages. TRANS

PACIFIC's motion to vacate the attachment and dismiss the Complaint should be granted on this ground alone.

Alternatively, under United States law, Naias advances no authority supporting its position that a claim for legal defense costs is an admiralty or maritime claim for purposes of Rule B. In point of fact, the authorities cited by NAIAS amply support TRANS PACIFIC's argument that a Rule B plaintiff must assert an admiralty claim if it wishes its application for legal costs to be granted by Court. It is clear under American law that the provision of legal services (even if such services effected the release of a vessel from arrest which enabled the vessel to perform its maritime functions) does not constitute a maritime claim. Thus, the Rule B maritime attachment obtained by the Plaintiff cannot be maintained.

Finally, the facts demonstrate that NAIAS had demanded countersecurity for its defense costs well before TRANS PACIFIC commenced its Rule B action on October 25, 2007. The contention that NAIAS did not know it would demand countersecurity until after November 14, 2007, the date TRANS PACIFIC voluntary dismissed its action, rings hollow and it is, at worst, an attempt to mislead the Court.

## ARGUMENT

## POINT I

### NAIAS' ARGUMENT THAT A CLAIM FOR LEGAL FEES IS MARITIME IS UNTENABLE UNDER EITHER ENGLISH OR AMERICAN LAW

***A. English Law***

The legal precedents in this District establish that the question of whether a party has asserted a valid admiralty claim within the ambit of Rule B must be decided under the law of the of the maritime contract relied upon by the party. *Sonito Shipping Co. Ltd. v. Sun United*

*Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007); *T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006). Judge Haight has clearly stated this rule as follows:

> The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, in this case the law of the contract. (Emphasis Added).

*Sonito*, 478 F. Supp. 2d at 543. Similarly, Judge Scheindlin has held that the law of the contract governs the existence of an admiralty claim whereas federal law "governs the determination of whether the attachment is reasonable." *T&O Shipping*, 415 F. Supp. 2d at 314. While NAIAS pays lip service to these controlling precedents, it ignores the basic rule of law they articulate.

NAIAS' argument confuses two separate issues: (a) the validity and (b) the reasonableness of a maritime attachment. Clearly, a Rule B plaintiff must *a priori* establish that it possesses "a valid maritime claim for purposes of Rule B." This analysis is driven by the law of the contract. Only after the validity of the attachment is proven will the Court examine the issue of whether the attachment is reasonable and should be maintained. It is the latter issue which is driven by U.S. Federal Law.

NAIAS has not challenged the Declaration of Max Cross, TRANS PACIFIC's English solicitor, but instead argues that English law is inapplicable. Rather than submit evidence through its English solicitors, NAIAS uses its American counsel to mischaracterize Mr. Cross' opinion by suggesting that the English law definition of an admiralty claim is narrowly limited to *in rem* actions against the vessel. Under English law, as **THE BUMBESTI** case demonstrates, admiralty claims can be asserted *in personam* or *in rem* pursuant to Section 20(2)(h) of the Supreme Court Act 1981. (Declaration of Max Cross, dated December 11, 2007 ("Cross Decl., ¶19). The only requirement is that the claim arise out of "an agreement in relation to the use or

hire of the ship." (Affidavit of James L. Ross, sworn to December 17, 2007 ("Ross Aff.,") ¶7; Cross Decl., Ex. B). It is nonsense for NAIAS to assume that because **THE BUMBESTI** case involved an arrest of a vessel, English law recognizes only *in rem* claims as being maritime. This Court should, therefore, reject New York counsel's passing and erroneous "view" of English law. The above English definition of an "admiralty" claim is quite similar to an admiralty or maritime claim as defined by U.S. Courts. *Fednav, Ltd. v. Isoromar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991) ("if the subject matter of the contract relat[es] ***to a ship in its use as such, or to commerce or to navigation on navigable waters, or to some transportation by sea or to maritime employment***, it is fairly said to constitute a maritime contract").

Mr. Cross gave his expert opinion that a claim for defense legal fees and costs in London arbitration is not an admiralty claim. Accordingly, if the Court agrees that English law controls the issue of what constitutes a maritime claim, the opinion of Mr. Cross remains unrebutted. As NAIAS bears the onus of proof as to why the attachment should not be vacated, the present motion to vacate should be granted on this ground alone.

***B. United States Law***

Alternatively, if the Court finds that U.S. Federal Law controls the issue of the validity of a Rule B admiralty claim, NAIAS' attachment cannot be maintained. As with TRANS PACIFIC's English law evidence, NAIAS avoids addressing the United States authorities cited by TRANS PACIFIC in its brief which hold that a legal fees claim is not transformed into a maritime claim simply because the legal services were provided in connection with a maritime action. *See e.g. Fednav, Ltd. v. Isoromar, S.A.*, 925 F.2d 599 (2d Cir. 1991); *Pires v. Heller*, No. 04-9069, 2004 U.S. Dist. LEXIS 23871 (S.D.N.Y. Nov. 24, 2004); *Gulf Marine and Industrial Supplies, Inc. v. M/V GOLDEN PRINCE*, 230 F.3d 178 (5th Cir. 2000).

Indeed, a cursory review of NAIAS' memorandum reveals that NAIAS has not cited any precedents in support of the proposition it advances to this Court that a claim for legal defense costs sounds in admiralty.[1] NAIAS' own precedents amply support TRANS PACIFIC's position that a claim solely for attorneys' fees is insufficient to maintain a Rule B attachment, and any request for costs must be accompanied with an independent, valid admiralty claim. For example, while NAIAS relies upon *Sea Route Ltd. v. National Bag & Trading Co.*, No. 07-3873, 2007 U.S. Dist. LEXIS 70617 (S.D.N.Y. Sept. 24, 2007) – even deliberately providing an **abbreviated** quote to this Court – it is clear that this decision does not support NAIAS' argument. In *Sea Route*, plaintiff asserted an independent maritime claim for demurrage and also sought costs for prosecuting that claim in arbitration:

> Through this application, plaintiff seeks to obtain jurisdiction over the defendant as well as obtain security ***for the amounts owed*** **and** anticipated costs for subsequent arbitration proceedings.

2007 U.S. LEXIS 70617, *1 (emphasis supplied). Similarly, *North of England P&I Ass'n v. M/V NARA*, No. 99-464, 1999 U.S. Dist. LEXIS 22375 (E.D.La. Feb. 26, 1999), buttresses rather than undermines TRANS PACIFIC's position that arbitration costs are granted only when ***coupled with*** a valid maritime claim. In the *M/V NARA* decision, the plaintiff obtained an order of arrest and attachment of the defendant's vessel based on a claim for outstanding maritime insurance premiums and calls not paid by the vessel's previous owners. In granting the Order of Attachment the Court stated:

---

[1] While NAIAS correctly cites *Aqua Stoli Shipping Ltd. V. Gardner Smith PTY*, 460 F.3d 434 (2d Cir. 2006) for the proposition that a Rule B plaintiff must show that "it has a valid *prima facie* **admiralty claim** against the Defendant," POINT III of its brief argues that "NAIAS PRESENTS **A MARITIME, NOT ADMIRALTY,** CLAIM AND THEREFORE, THE ATTACHMENT . . . IS VALID." Honestly, we are at odds to divine a difference between an "admiralty claim" and a "maritime claim" under American law. As the Rule B jurisprudence reveals, both terms are used interchangeably. But even if a difference could be fathomed, NAIAS concedes that it does not possess an *Aqua Stoli* "admiralty claim." Hence, by its own admission, the attachment cannot be maintained.

> Here, plaintiff has requested that the court fix security for the amount of ***their claim***, which is $1,132,351, ***plus*** the amount it estimates it will cost to engage in arbitration procedures in England, or $400,000. The total requested by plaintiff, then, is $1,532,351.40. This amount is less than twice the amount ***of the claim***.

1999 U.S. Dist. LEXIS 22375, *9-10 (emphasis supplied). The above quoted passage demonstrates that the Louisiana District Court did not deem the costs of arbitration to be a maritime claim. Quite the contrary, the costs were simply appended to the admiralty claim for unpaid insurance premiums and calls.

In our case, it is undisputed that NAIAS has not asserted an independent counterclaim for breach of the charter party at issue. Furthermore, NAIAS is in breach of LMAA Rules, which were agreed to in the charter party, by attaching TRANS PACIFIC's funds. Under the LMAA Rules, NAIAS is entitled to demand countersecurity for its defense costs to the Arbitration Tribunal ***after*** its has submitted its Defense Submissions. (Cross Decl., ¶¶7, 12, 14). NAIAS has not yet made any such submissions. NAIAS' Rule B application is therefore premature.

NAIAS also misguidedly relies upon Supplemental Admiralty Rule E(2)(b) for the proposition that a Rule B plaintiff has a right to secure the legal costs incurred in a foreign arbitration. This argument is without merit. The clear text of Rule E(2)(b) shows that the "costs" referred to are the costs a party incurs in United States proceedings, ***not*** in London arbitration proceedings. The Rule prescribes that the court "shall direct" payment of "all costs and expenses that shall be awarded against the party ***by any interlocutory order or by the final judgment***, or on appeal ***by any appellate court***." Adm. Supp. Rule E(2)(b) (emphasis supplied). Thus by its unambiguous terms, the Rule is limited to costs awarded by Federal District and Appeals Courts. *Greger Leasing Corp. v. Barge PT. POTRERO*, No. 05-5117, 2006 U.S. Dist. LEXIS 18863, *11 (N.D. Cal. April 5, 2006) ("Claimants overlook the fact that the Court **is limited by Supplemental Admiralty Rule E(2)(b)** to awarding security for costs that will be ***awarded by***

***this Court or upon appeal***.") (Emphasis supplied). Indeed, Rule E(2)(b) states that it is subject to Rule 54(d), which Rule governs "Judgment" and "Costs" in the Federal District Courts. Again, conspicuously absent from NAIAS' brief is any legal precedent supporting the argument it advances to the Court. This Court should reject NAIAS' argument, as it flies in the face of the unambiguous text of Rule E(2)(b).

Finally, as a last-ditch effort, NAIAS argues that *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006), supports its position that a claim solely for legal defense costs is a maritime claim. This argument is equally without merit. In *Ullisses Shipping*, the Court, pursuant to Supplemental Admiralty Rule E(7), granted countersecurity for defendant's costs of defending an action before the High Court of London. However, it does not follow that such a grant of countersecurity pursuant to Rule E(7) means that a claim for legal costs is a maritime claim for the purpose of obtaining a Rule B attachment. First, a review of *Ullisses Shipping* shows that the Court was not presented (and therefore did not address) that specific issue. Rather, the Court merely stated that a claim for defense costs was a "counterclaim" within the purview of Rule E(7). Crucially, unlike Rule B attachments, there is no requirement under Rule E(7) that the defendant prove that it has a valid *prima facie* maritime claim against the plaintiff. In our case, NAIAS, as a Rule B plaintiff, must establish that it possesses, *inter alia*, "an admiralty claim" against the defendant TRANS PACIFIC. *Aqua Stoli*, 460 F.3d at 445. Hence, different legal standards govern applications made pursuant to Rule B and Rule E(7). NAIAS has impermissibly collapsed them into one.

Essentially, *Ullises Shipping* supports TRANS PACIFIC's position that NAIAS was obligated to make its application for security for legal defense costs under Rule E(7) while TRANS PACIFIC's action was pending. *See also Chiquita Int'l Ltd. v. M/V BOSSE*, No. 07-6786,

2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. Oct. 11, 2007). In failing to do so, NAIAS effectively waived its right to the application of an arguably more lenient standard, and must now comply with the requirements of Rule B.

Indeed, to obfuscate the record, NAIAS asserts misleading factual allegations. NAIAS' claims justification for failing to make a counter-security application before Judge Stanton because it was not until November 14, 2007, the day it received legal advice from its English solicitors and the day TRANS PACIFIC dismissed its Rule B action, that it made the decision to defend the arbitration and demand countersecurity. However, the undisputed facts demonstrate that NAIAS had demanded countersecurity for its defense costs at least six days before TRANS PACIFIC filed its Rule B application on October 25. In an e-mail message dated ***October 19, 2007***, NAIAS, through its brokers and in response to TRANS PACIFIC's demand for security, advised TRANS PACIFIC as follows:

> OWNS (NAIAS) HV ADVISED CHRTS (TRANS PACIFIC) THAT THEY ARE PREPARED TO PROVIDE SECURITY TO CHRTS FOR THEIR ALLEGED DAMAGES ***PROVIDED OF COURSE CHRTS TO PROVIDE COUNTER SECURITY FOR OWNS LEGAL COSTS TO DEFEND*** CHTRS ALLEGED CASE .

(Ross Aff., ¶2, Ex.C). On October 24, NAIAS offered to provide security but it was conditioned upon TRANS PACIFIC's posting countersecurity for costs of defense: "AS FAR AS SECURITY IS CONCERNED OWS HAVE STATED THEIR POSITION. ARE CHARTS PREPARED TO PUT UP COUNTER SECURITY FOR OWS COSTS TO DEFEND CHARTS CLAIM." (Ross Aff, ¶2, Ex. D).

NAIAS was aware of the attachment proceeding when its assets were attached on Thursday, November 8th. NAIAS posted security the following Wednesday November 13. It is therefore obvious that NAIAS had more than ample time to demand countersecurity before

Judge Stanton while TRANS PACIFIC's Rule B action was pending. Instead, NAIAS deliberately awaited the dismissal of TRANS PACIFIC's action and then commenced its own *ex parte* Rule B proceedings for security. The documentary evidence therefore palpably demonstrates that NAIAS does not come before this Court with "clean hands." NAIAS' conduct becomes all the more inequitable by the fact that it is violating the LMAA Rules by which it agreed to be bound. *Sonito*, 478 F. Supp. 2d at 543. NAIAS cannot now demand the application of the more lenient and discretionary standard of Rule E(7), for that ship has already sailed. NAIAS bears the onus to prove that a claim for legal fees and costs is a maritime claim. It has failed to do so.[2]

[2] To obfuscate the record further, NAIAS accuses TRANS PACIFIC of serving a writ in excess of what it was entitled to demand in security. This argument fails for two reasons: (1) TRANS PACIFIC never attached funds in excess of what it was entitled to demand, and hence it did not abuse process; and (2) NAIAS did not appear or moved to contest the validity or reasonableness of Defendant's attachment. Moreover, the documentary evidence also demonstrates that NAIAS intentionally forestalled the furnishing of security after it had agreed to sell the vessel – once TRANS PACIFIC learned of the sale, it was forced to arrest the vessel and commence Rule B proceedings against NAIAS. (Ross Aff, ¶¶3-6, Exs. C, D and E).

**CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that this Court grant the within motion, vacate the attachment of Defendant's assets, dismiss the Verified Complaint and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 17, 2007

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Defendant
TRANS PACIFIC CARRIERS CO. LTD.

By: ______________________
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)
80 Pine Street
New York, New York 10005
(212) 425-1900

TO: CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, NY 11050
Attn: Owen F. Duffy, Esq.