UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NAIAS MARINE S.A.,

                Plaintiff,

   - against -

TRANS PACIFIC CARRIERS CO. LTD.,

                Defendant.

OPINION AND ORDER

07 Civ. 10640 (PKL)

*USDC SDNY — DOCUMENT ELECTRONICALLY FILED — DOC #: ___ — DATE FILED: 1/10/08*

APPEARANCES

CHALOS, O'CONNOR & DUFFY, LLP
366 Main Street
Port Washington, NY 11050-3120
Owen Francis Duffy, III, Esq.
George Edmund Murray, Esq.

    <u>Attorneys for Plaintiff</u>

FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, New York 10005
James L. Ross, Esq.
Manuel A. Molina, Esq.

    <u>Attorneys for Defendant</u>

**LEISURE, District Judge**:

Defendant Trans Pacific Carriers Co. Ltd. ("Trans Pacific") moves this Court pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure for an order vacating the process of maritime attachment and garnishment levied in favor of plaintiff Naias Marine S.A. ("Naias") pursuant to this Court's <u>ex parte</u> order dated November 28, 2007 and for dismissal of the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the following reasons, Trans Pacific's motion is GRANTED.

## BACKGROUND

This action arises out of a maritime contract charter party agreement between Naias and Trans Pacific. Naias, a foreign business entity operating under an address in the Marshall Islands, owns the vessel M/V Stentor and charters the vessel to others for the carriage of cargo. Trans Pacific, a foreign business entity operating under an address in Seoul, Korea, is a transporter of cargo by ocean vessels. On August 14, 2007, Naias and Trans Pacific entered into a charter party contract whereby Trans Pacific hired the M/V Stentor for two to three voyages of a minimum of sixty days and a maximum of one-hundred days. This

charter party provides that disputes arising out of the contract shall be governed by English law and referred to arbitration in London. (Cross Decl. Ex. A.)

On October 1, 2007, Trans Pacific gave notice that it would not continue for a third voyage and that it would deliver the M/V Stentor on or about October 20 or 21, 2007. Naias contends that Trans Pacific also stated that its message was to serve as its twenty-day redelivery notice under the charter party. (Complaint ¶ 10.) Naias states that it accepted the notice and made arrangements to charter the vessel to others. (Complaint ¶ 11.) Later that same day, October 1, 2007, Naias asserts that Trans Pacific "began to indicate that it wished to revoke its redelivery notice." (Complaint ¶ 12.) Naias did not accept the revocation, and instead accepted redelivery of the vessel.

On October 25, 2007, Trans Pacific sued Naias in the Southern District of New York alleging that Naias was in breach of the charter party for wrongfully withdrawing the vessel prior to performance of the third voyage. In that action, Trans Pacific Carriers Co. Ltd. v. Naias Marine S.A., No. 07 Civ. 9544, Trans Pacific sought security for a claim that was to be arbitrated in London and for costs associated with the arbitration (the "Trans Pacific action"). Judge Louis L. Stanton granted the attachment

request and thereafter Trans Pacific attached $711,605.60 of Naias's assets. (Def.'s Reply at 9.) Naias did not seek countersecurity in the Trans Pacific action. (Def.'s Mot. at 2.) Trans Pacific voluntarily dismissed the action after Naias provided security to Trans Pacific in the form of a Letter of Guarantee from HSBC Bank for $978,238 -- $590,863 for the principal claim, $137,375 for interest, and $250,000 for estimated costs of London arbitration. (Duffy Aff. Ex. C-D.) Thus, on November 14, 2007, Judge Stanton signed a Notice of Dismissal and ordered that the funds under attachment be released.

On November 28, 2007, Naias filed this action against Trans Pacific. Naias sought an ex parte order directing the clerk to issue process of maritime attachment and garnishment against Trans Pacific pursuant to Admiralty Rule B of the Federal Rules of Civil Procedure in an amount up to $250,000. On November 28, 2007, the Court issued such an order.

The basis of Naias's Complaint is a claim for estimated costs for defending against Trans Pacific's maritime claims in the London arbitration. Naias states that it expects to succeed in arbitration and recover its costs in the arbitration from Trans Pacific. Naias alleges that Trans Pacific has refused to provide Naias with

security for costs that will be incurred to defend the arbitration, leading it to seek security for $250,000.00, the expected costs of defending the London arbitration.

On December 11, 2007, Trans Pacific filed an Order to Show Cause pursuant to Rule E(4)(f), seeking an order vacating the process of attachment levied pursuant to the November 28, 2007 order. Trans Pacific also seeks dismissal of the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. On December 14, 2007, Naias filed papers in opposition to this motion. Trans Pacific filed its reply papers on December 17, 2007. On December 19, 2007, the Court held a hearing pursuant to Rule E(4)(f) (the "December 19 hearing").[1]

## DISCUSSION

Trans Pacific moves to vacate the order of attachment and dismiss the complaint against it on the ground that this Court has no subject matter jurisdiction over Naias's claim for costs and fees.[2]

---

[1] Once defendant's property has been restrained by a maritime attachment order, Rule E(4)(f) provides defendant an opportunity to appear before the Court to contest the attachment. See Fed. R. Civ. P. Supp. R. E(4)(f). At a Rule E(4)(f) hearing, defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), advisory committee's note.

[2] Although the parties focused their arguments on Trans Pacific's motion to vacate, the Court first addresses whether it has subject matter

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)(citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)); see also Brocsonic Co., Ltd. v. M/V Mathilde Maersk, 120 F. Supp. 2d 372, 375 (S.D.N.Y. 2000)("A plaintiff 'seeking to invoke the subject matter jurisdiction of the district court bears the burden of showing that he [is] properly before that court.'" (quoting Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996))). Naias asserts jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. (Complaint ¶ 1.) Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1). Naias has not alleged any alternative grounds for subject matter jurisdiction in this action. (12/19/07 Tr. at 14:17-24.)

Trans Pacific asserts that this Court lacks subject matter jurisdiction because Naias's claim is for legal defense costs and not a maritime claim. (Def.'s Mot. at

---

jurisdiction over the case. See Professional Traders Fund, LLC v. Prairie Oil & Gas, Inc., No. 06 Civ. 1012, 2007 WL 4027494, at *2 (S.D.N.Y. Nov. 16, 2007)(holding that prior decision on the merits must be vacated because the Court lacks subject matter jurisdiction and stating that the Second Circuit has "foreclos[ed] the practice of assuming jurisdiction and deciding a case on the merits against the party asserting jurisdiction"); see also Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85-86 (2d Cir. 2006).

11.) Trans Pacific states that "[s]ince under either English or American law a claim for legal fees and costs is not maritime, this Court lacks subject matter jurisdiction and the Naias[] Complaint should be dismissed." (Def.'s Mot. at 12.) Naias asserts that it has a valid maritime claim because its arbitration defense costs arise out of the parties' arbitration agreement in the charter party, which is a maritime contract. (Pl.'s Opp. at 7.)

The parties agree that English law governs the substantive claims of their dispute under the charter party; however, they dispute what law governs the validity of the claim. Trans Pacific asserts that English law governs the validity of Naias's claim,[3] while Naias asserts that American federal law should control.[4] Regardless of

---

[3] Although Trans Pacific maintains that English law governs, Trans Pacific asserts that the same result would be reached under American law, stating that "[u]nder English and American jurisprudence a claim based solely on potential costs in defending a maritime claim in arbitration is not a valid maritime claim." (Def.'s Mot. at 6.) Trans Pacific, supported by a Declaration from its English counsel, Max Cross, argues that, under English law, the costs of defending arbitration can only be awarded if Naias prevails at arbitration. (Def.'s Mot. at 7.) Further, a claim for arbitration costs "does not sound in admiralty" under English law. (Def.'s Mot. at 7.) In addition, Trans Pacific contends that because Naias has not asserted any counter-claim against Trans Pacific, the security for costs is not "ancillary" to any claim for breach of a maritime agreement. (Def.'s Mot. at 7.)

[4] Naias responds that American federal law must govern the validity of the claim. (Pl.'s Opp. at 5-6.) Naias states that Rule B is a procedural remedy and federal law applies to procedural issues, even if foreign law governs the underlying contract. (Pl.'s Opp. at 6.) Thus, Naias asserts that the Court should disregard Trans Pacific's contention that Naias's claim for costs does not constitute an maritime claim under English law and, similarly, disregard Mr. Cross's

7

which law applies, the outcome is the same. Naias has failed to meet its burden of showing that its Complaint contains a maritime claim.

Under English law, Naias has failed to meet its burden of showing that it has a maritime claim.[5] Indeed, Naias fails to put forth any argument as to whether it has a valid claim under English law. Rather than rebut the assertions of Trans Pacific and Mr. Cross with its own interpretation of English law, or a declaration from its own English counsel,[6] Naias asks the Court to disregard

---

Declaration in support of Trans Pacific's motion. (Pl.'s Opp. at 7.) Naias contends that under federal law, it has set forth a maritime claim. Specifically, Naias states that because its arbitration defense costs arise out of the parties' arbitration agreement in the charter party, which is a maritime contract, its claim for legal costs is a maritime claim. (Pl.'s Opp. at 7.)

[5] Other courts in this district have held that the validity of a prima facie admiralty claim is a substantive issue to be decided by the Court. In considering whether a plaintiff's complaint pleaded a valid prima facie admiralty claim, the Court in Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd. plainly stated that "[t]his is a question of substantive law." 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007)(holding that English law, the applicable substantive law of the underlying contract, applies to the Court's consideration of whether plaintiff has demonstrated a valid prima facie admiralty claim). Similarly, in T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., the Court stated that "[t]he law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable." 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006). The parties agreed that English law would govern under the charter party, thus, the Court considers whether Naias has asserted a maritime claim under English law.

[6] Although the record makes clear that Naias has consulted with English counsel in connection with this dispute, Naias did not submit a declaration from its English counsel. (Duffy Aff. at 10-11.) However, its American counsel, Owen F. Duffy, Esq., submitted an affidavit.

Trans Pacific's arguments and Mr. Cross's Declaration. (Pl.'s Opp. at 7-9.)

Mr. Cross states that "[u]nder English law, defense legal costs awarded in arbitration do not fall within the English law definition of an 'admiralty claim.'" (Cross Decl. ¶ 16.) In support of his conclusion, Mr. Cross states that "[t]he English legal system draws a clear distinction between the damages in the substantive sense, for example a claim for damages under a [charter party], and the legal costs/attorney fees awarded after the claim has been decided. The costs are determined after the Court has ruled on the substantive merits." (Cross Decl. ¶ 18.) Substantive damages under a charter party would be a "claim arising out of any agreement relating to the carriage of goods in a ship or to the use or hire of a ship." (Cross Decl. Ex. B at 1.) A claim for legal costs and fees, however, arises out of an arbitration award, "which is distinct from the charterparty [sic] and which is not [an] 'agreement in relation to the use or hire of a ship.'" (Cross Decl. ¶ 20; Ex. B.) Thus, if Naias is successful at arbitration, it would have a claim for legal fees and costs, but such a claim would not be an admiralty claim under English law.

9

As discussed above, Naias bears the burden of showing that it has subject matter jurisdiction. See Makarova, 201 F.3d at 113. Naias asserts that the Court should disregard Trans Pacific's arguments and Mr. Cross's Declaration, but has failed to put forth any alternative interpretation of English law. (Pl.'s Opp. at 7-9.) Further, at the December 19 hearing, Naias's counsel stated that he was "not going to disagree with [Mr. Cross's] characterization of English law . . . ." (12/19/07 Tr. at 16:1-3.) Naias's counsel went on to state that if Mr. Cross is correct that a claim for costs is not an admiralty claim under English law, then Trans Pacific should not have received a Rule B attachment for its costs in the Trans Pacific action. (12/19/07 Tr. at 16:3-9.) Trans Pacific's counsel noted in response, however, that "the key distinction is that [Trans Pacific] ha[s] a claim for damages and the costs were part of that claim, whereas on the defense side [Naias] do[es] not have any claim." (12/19/07 Tr. at 16:11-13.) In the Trans Pacific action, Trans Pacific set forth a valid prima facie admiralty claim for breach of the charter party agreement, and obtained an attachment for that claim, with an ancillary claim for costs. Naias asserts no such underlying substantive claim. Naias's sole claim is for estimated costs arising out of the London arbitration.

Although that arbitration arises out of its alleged breach of a maritime contract, this does not make a claim for arbitration costs, with nothing more, maritime in nature.

Under American federal law, Naias also has failed to meet its burden of showing that it has a maritime claim. Although it is not plainly defined, see, e.g., Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991); Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS, 78 F. Supp. 2d 162, 166-67, (S.D.N.Y. 1999), under federal law, an admiralty claim must relate to maritime activity. For example, considering the nature of an admiralty claim relating to a contract, the Court in Dolco Investments, Ltd. v. Moonriver Development, Ltd. stated that "[i]n determining whether a contract falls within the admiralty jurisdiction, the 'true criterion is the nature and subject matter of the contract, having reference to maritime service or maritime transactions.'" 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007)(quoting Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 610 (1991)); see also Fednav, Ltd., 925 F.2d at 601 ("We have recognized that if the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime

employment[,] it is fairly said to constitute a maritime contract." (internal quotations omitted)).

The Court's decision in Pires v. Heller also is instructive. See Pires v. Heller, No. 04 Civ. 9069, 2004 WL 2711075 (S.D.N.Y. Nov. 24, 2004). In that case, plaintiffs brought claims arising out of a dispute for legal fees in connection with a prior maritime action. Seeking to invoke the federal jurisdiction afforded to maritime claims, defendant asserted that plaintiffs' claims were maritime claims. The Court disagreed, holding that the Court lacked subject matter jurisdiction because "[a] breach of contract claim will invoke admiralty jurisdiction if the contract 'incorporates a *uniquely maritime concern*.'" Id. at *2 (quoting Am. Home Assur. Co. v. Merck & Co., Inc., 329 F. Supp. 2d 436, 440 (S.D.N.Y. 2004)).[7] Although Naias's claim for fees and costs is not a breach of contract claim, the Pires decision is helpful in the Court's determination. Naias's claim is one for legal costs arising out of an arbitration, which is not a "uniquely maritime concern." Id. Rather, as in Pires, Naias's claim relates to legal representation. Thus, Naias's claims are "too tangential to maritime law to be considered 'maritime claims.'" Id.

---

[7] Similarly, as to tort claims, the Pires Court held that "the propriety of admiralty jurisdiction over particular torts depends on the tort's relationship to 'traditional maritime activity.'" Pires, 2004 WL 2711075, at *2 (quoting Am. Home Assur. Co., 329 F. Supp. 2d at 440).

12

The Pires Court also stated that "[s]imply labeling these claims as 'maritime' does not make them so. Nor can the fact that the previous lawsuit involved maritime claims be sufficient to establish admiralty jurisdiction over any future lawsuits arising between the parties." Id. at *3. Similarly, in the instant case, just because the Trans Pacific action and the London arbitration involve maritime claims, that alone is not sufficient to establish admiralty jurisdiction over Naias's action. Thus, Naias's claim is for legal costs, which are not a maritime concern.

Although its lawsuit "was initiated for the specific purpose of employing the Rule B Maritime Attachment Procedure . . . ," (Complaint ¶ 15), in support of its argument that it has a maritime claim, Naias relies on case law under Rules E(7) and E(2)(b). (Pl.'s Opp. at 10-12.) Rule E(7) provides for security on a counterclaim. See Fed. R. Civ. P. Supp. R. E(7)(allowing defendants to seek counter-security when the "counterclaim arises from the same transaction or occurrence that is the subject of the original action"). Naias has not asserted a counterclaim, rather, it has asserted an independent claim in a separate action.[8]  In considering a counterclaim, which "arises from

---

[8] The question of whether Naias would have had a valid claim for counter-security under Rule E(7) is not appropriate in this action.

13

the same transaction or occurrence that is the subject of the original action," id., the Court's analysis differs from the consideration here of whether Naias's independent claim affords subject matter jurisdiction.[9] Similarly, although Rule E(2)(b) governs security for costs, see Fed. R. Civ. P. Supp. R. E(2)(b), Naias did not seek security under that rule. See, e.g., Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 324 n.3 (S.D.N.Y. 2005)(denying request for counter-security where party sought security under Rule E(7), but should have sought security under Rule E(2)(b)). Rule E(2)(b) merely demonstrates that if Naias asserted a maritime claim, it likely would be entitled to security for costs as well. Naias, however, has asserted only a claim for legal costs, without more. While Rules E(2)(b) and E(7) may be indicative of the Court's ability to grant security for costs under other circumstances, here, where Naias has

---

Naias missed its opportunity to assert such a counterclaim by failing to do so while the Trans Pacific action was still pending.

[9] Additionally, the standards applied to Rule E(7), differ from those under Rule B. See, e.g., North Offshore AS v. Rolv Berg Drive AS, No. 07 Civ. 3095, 2007 WL 4233014, at *2 (S.D.N.Y. Nov. 29, 2007)(noting that the "standard for a Rule B attachment is not the standard that applies to motions for countersecurity brought pursuant to Rule E(7)"). Notably, Rule B allows a party to obtain security ex parte, while Rule E(7) does not. Compare Fed. R. Civ. P. Supp. R. B, with Fed. R. Civ. P. Supp. R. E(7). Further, as Trans Pacific notes in its submission to the Court, "[c]rucially, unlike Rule B attachments, there is no requirement under Rule E(7) that the defendant prove that it has a valid prima facie maritime claim against the plaintiff." (Def.'s Reply at 7.)

failed to set forth a maritime claim, those rules do not apply.

Naias has failed to meet its burden of showing that maritime or admiralty jurisdiction exists. The Court lacks subject matter jurisdiction over this case. Therefore, Trans Pacific's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Naias's Complaint is DISMISSED and, thus, the attachment must be VACATED.

CONCLUSION

For the reasons set forth above, defendant Trans Pacific's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED. This action is hereby DISMISSED for lack of subject matter jurisdiction. The Court hereby orders that its November 28, 2007 ex parte order of attachment be VACATED and directs the garnishees to release all restrained funds.

SO ORDERED.
New York, New York

January 9, 2008

*[signature]*
U.S.D.J.